## K. P. MIN. CO. v. JACOBSON.*

No. 1669. Decided January 25, 1906 (83 Pac. 728).

1. VENDOR AND PURCASER — SURRENDER OF OPTION.—There is a surrender of an option to purchase a mine, where the purchaser signifies his intention to surrender it and forfeit his rights and the vendor thereupon takes possession and continues therein.

2. SAME — EVIDENCE.—Evidence, in an action for breach of a contract containing an option for purchase of a mine, *held* insufficient to sustain a finding that there was not a surrender by the purchaser and an acceptance thereof by the vendor.

3. SAME—DAMAGES—LIMITATION BY CONTRACT.—An option for purchase of a mine, providing for certain payments and certain work at certain times by the purchaser, and that if the purchaser shall fail to pay any of the installments of the purchase price, or shall fail to comply with any of the covenants or conditions, the contract shall terminate and all installments, or other sums which may have been paid by the purchaser, shall be forfeited and become liquidated damages, limits the damages, where the contract is forfeited, to work done and payments made.

APPEAL from District Court, Salt Lake County; C. W. Morse, Judge.

* Effect of provision for forfeiture of sums paid or retained under executory contract, to prevent recovery of any other damages after breach of the contract, see note, 4 L. R. A. N. S. 755.

Action by the K. P. Mining Company against Tony Jacobson. Judgment for plaintiff. Defendant appeals.

REVERSED.

*Cannon, Irvine & Snow* for appellant.

*Frick & Edwards* for respondent.

### APPELLANT'S POINTS.

An option is a mere right of election and when the defendant had exercised his right of election, which was the election not to purchase, he had gotten all that was granted to him in said option and by the said contract and having elected not to purchase under the option, he was thereby precluded from claiming any rights to elect to purchase said property, for the option is nothing more or less than the right of election or an unaccepted offer. (21 Am. and Eng. Enc. Law (2 Ed.), 924, 104 Ga. 157, 10 Mont. 5, 153 Pa. St. 646.)

An election under the authorities need not be made in writing. (21 Am. and Eng. Enc. Law (2 Ed.), p. 927, 27 Ind. 269, 69 Pa. St. 474, 35 W. Va. 736.)

A surrender takes place when the lessee signifies his intention to surrender and the plaintiff by his acts impliedly accepts and consents to said surrender and such arrangement under the authorities constitutes a contract by operation of law concerning lands which need not be in writing. (18 Am. and Eng. Ency. Law (2 Ed.), 358 and cases cited, 18 Am. and Eng. Enc. Law (2 Ed.), p. 362 and cases cited.)

### RESPONDENT'S POINTS.

It is well settled that the surrender of a lease must be in writing unless it results from the giving up of possession by the tenant and its acceptance by the landlord in pursuance of an oral agreement to surrender, in which case it operates as a surrender by operation of law. (18 Am. and Ency. of Law (2 Ed.), 362.)

But to prove a surrender by change of possession, it must be shown not only that the tenant quitted the premises, but that the landlord, by some unequivocal act, accepted the possession. (18 Am. and Eng. Ency. Law (2 Ed.), p. 363.)

### STATEMENT OF FACTS.

This is an action to recover for an alleged breach of a certain contract made between plaintiff and defendant August 28, 1903. The contract contained an option giving the defendant the right to purchase from plaintiff certain mining claims known as the Native Copper No. 1, No. 2, and No. 3 lode mining claims, situated in Little Cottonwood mining district, Salt Lake county, Utah. The contract, so far as material here, recites that the agreed purchase price for all the claims mentioned is $40,000, payable as follows: $5,000 on or before February 28, 1904; $10,000 on or before August 28, 1904; $25,000 on or before August 28, 1905. That the second party shall, on or before February 28, 1904, or immediately thereafter, make application and proceed to procure a patent from the government of the United States in the name of the first party, and that said application shall be prosecuted with diligence to final entry, and all sums of money required for the procuring of said patent shall be advanced by the second party. "Time is the essence of this contract and in the event the second party shall fail to pay any one of said installments within the time provided therefor or in the event said second party shall fail to comply with the covenants and conditions herein imposed upon him or any one of the same then this contract shall terminate and be of no force and effect and all installments or other sums which may have been paid by the second party under this contract or by reason thereof shall be forfeited by the said second party and become the property of the first party as liquidated damages and as additional compensation for the use of the property under said contract, and the said first party shall be relieved from all liability existing hereunder. The second party shall take possession of said mining claims at once and commence

work upon the same within fifteen days after the date of this lease and shall cause to be performed upon said property not less than 120 shifts (one man working one day constituting one shift) of mining labor each and every month of the term of this lease. And it is further understood and agreed that in the event the second party shall fail to comply with each and all of the covenants, conditions, and agreements assumed and imposed upon him under this contract, then the party of the first part may at his option, terminate this lease by giving a written notice of his option, so to do to the second party and in such event this' lease shall become null and void and of no effect and thereupon the contract of sale and purchase herein-above set forth shall immediately terminate and be of no force or effect and all payments or installments made by the second party under the contract of sale and purchase and under this lease shall be forfeited by the second party and become the property of the first party as liquidated damages and as ad-ditional compensation for the use of said property under this contract and the said first party in such event shall be relieved of all liability otherwise existing hereunder."

Defendant went into possession of the mining claims, and, during the month of September, 1903, caused to be performed thereon thirty-five shifts of labor. On October 5, 1903, he in-formed William Kiesling who was manager and also a direc-tor of plaintiff company, that he (the defendant) guessed he would have to surrender the property. Kiesling was called as a witness for the plaintiff, and testified on this point in part as follows: "Well, he says [referring to defendant] : 'I don't know if we can do anything with it,' he says: 'I guess I will have to give it back to you.' . . . I said to him: 'If you had thought of that a month ago, why didn't you tell us? You ought to have told us that a month ago.' And he said: 'Well, I guess I will have to give it back to you.' And I said: 'We will see what we can do.' " On this point defendant tes-tified and he is corroborated by two other witnesses, that he stated he could not do anything with the property and would have to give it up, and Kiesling answered: "All right I am glad of it." On October 15, 1903, ten days after the forego-

ing conversation, plaintiff, without notice to or consulting defendant, went upon the property referred to and had it surveyed by a United States deputy mineral surveyor for the purpose of obtaining a patent therefor, and in due time made application for patent. On February 4, 1904, plaintiff commenced this action to recover from defendant $1,500, because of defendant's failure to perform, during each and every month since the 28th day of August, 1903, 120 shifts of labor on the mining claims referred to. The case was tried by the court without a jury, and after hearing the evidence the court, among other things found "that said defendant did not, on or before the 1st day of October, 1903, or at any time, or at all surrender to the plaintiff all or any rights under said contract option and lease, and did not then and there, or at any time, or at all, surrender and deliver to the plaintiff the possession of said premises, or any part thereof, . . . and said plaintiff did not then and there, or at any other time, or at all, prior to the 28th day of February, 1904, enter into possession of said premises, or any part or portion thereof, and that said plaintiff was not, at any time between the 28th day of August, 1903, and the 28th day of February, 1904, in possession of said premises, or any part thereof."

Judgment was entered in favor of plaintiff for $1,410. Defendant appeals.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellant contends that the finding made by the court wherein it is held that he did not surrender his option on October 5, 1903, and that the plaintiff did not take possession of the property on the 15th day of the same month, is contrary to, and not supported by, the evidence. While there is some conflict in the evidence respecting the language used by appellant when he claims to have notified Kiesling, who was the manager of respondent company and one of the directors, that he wanted to forfeit the option he had under the contract to purchase and surrender the property, yet, when considered in connection with the admitted fact that the company, on the

15th day of October, went into possession of the property for the purpose of making a survey for patent, and, for aught that appears in the record, has ever since continued in possession thereof, and performed work and incurred expenses which the contract expressly provided should be performed and borne by appellant, shows that, whatever the exact language used by appellant may have been when he signified his intention to surrender his option and forfeit his rights under the contract, the company, by its acts in taking and continuing in possession of the property, accepted and treated the statements and conduct of appellant as a surrender by him of the property and a forfeiture of his rights under the contract.

"An actual and continued change of possession by the mutual consent of the parties will operate as a surrender by operation of law, though there was no express agreement of the parties that it should so operate." (18 Am. & Eng. Enc. L., 362.)

The finding of the court on this point is not only unsupported by, but is contrary to, the evidence.

There is another reason why respondent cannot recover in this action. The contract itself provides for liquidated damages; that is, the parties have stipulated therein what the damages shall be in case of a breach by appellant of any of its covenants. And the general rule is that when parties to a contract of this kind, where the damages resulting from a breach thereof are uncertain in amount, have stipulated what such damages shall be, no other or greater damages than those agreed upon can be recovered. In 8 Am. & Eng. Enc. L. (2 Ed.), 636, the doctrine is stated as follows:

"If the parties to a contract themselves limit the damages by stipulation in the contract itself, the measure of damages will be thereby controlled and determined. Thus, in an action on a written contract for a stipulated amount, the contract itself furnishes the measure of damages."

In 13 Cyc. 90, it is said:

"The contract is to govern, and the true question is: What was the contract? Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence, if the intention is clear.

If there be no fraud, circumvention, or illegality in the case the court is bound to enforce the agreement."

In Page on Contracts, section 1171, the author, in stating this general doctrine, says:

"If the actual damages exceed those contracted for, the injured party is bound by the stipulation of the contract, and cannot recover the actual amount of damages." (1 Sutherland on Damages [3 Ed.], sec. 279; *Hennessy v. Metzger*, 152 Ill. 505, 38 N. E. 1058, 43 Am. St. Rep. 267; *Jackson v. Hunt* [Vt.], 56 Atl. 1010.)

This doctrine is so well settled that we deem a further discussion and citation of authorities unnecessary.

The contract under consideration in part provides that in case appellant shall fail to pay any one of the installments of the purchase price therein mentioned, "or shall fail to comply with the covenants and conditions therein imposed upon him or any one of the same then this contract shall terminate . . . and all installments or other sums which may have been paid by the second party [appellant] shall be forfeited by the said second party and become liquidated damages," etc. It will thus be observed that the contract by its terms clearly provides what the damages shall be in case of a breach of any of its provisions by appellant: First, he shall forfeit whatever installments of the purchase price he may have paid, and, second, "other sums which may have been paid by him." Now, the term "other sums" undoubtedly includes the money paid by appellant for work done on the mining claims referred to, and which is one of the forfeitures therein mentioned. If respondent could recover for the price of unperformed labor sued for in this case, he would be entitled to recover the amount of the first installment, $5,000, of the purchase price of the property, and it appears to be conceded that an action would not lie for the breach of this covenant.

The judgment is reversed, and as it is plain that respondent, by the terms of the contract itself, is precluded from recovering damages in any sum, the trial court is directed to dismiss the case; the costs of this appeal to be taxed against respondent.

BARTCH, C. J., and STRAUP, J., concur.