## DONOVAN v. HANAUER.

No. 1826. Decided May 28, 1907 (90 Pac. 569).

1. VENDOR AND PURCHASER—PAYMENT OF PURCHASE MONEY—EFFECT OF DEFAULT—EXCUSES FOR DEFAULT. Plaintiff agreed with defendant to convey to him "by a good and sufficient title" certain mining claims, and in consideration thereof defendant agreed to pay $1,500 on a certain date and to transfer certain other property to plaintiff, and also agreed, in the event of his failure to pay the $1,500 at the time specified, to forfeit to plaintiff $500 as liquidated damages. *Held* that, where defendant failed to pay the $1,500 as specified, plaintiff was entitled to the $500 as forfeit, though he did not tender to defendant a good and sufficient title to the mining claims, or any title at all.

2. SAME—REQUISITES AND VALIDITY OF CONTRACT—ESTATE OR INTEREST OF VENDOR. A party may agree to sell one or more mining claims to which he has no title, and that he will convey a good and sufficient title upon the performance of all the conditions by the purchaser.

3. DAMAGES—BREACH OF CONTRACT—LIQUIDATED DAMAGES. Where parties to an agreement provide thereby that, on the failure of one of them to perform the conditions of the contract as agreed, he will forfeit $500 as liquidated damages, on his failure to so do, the other party is limited in his damages for the breach of the contract to the specified sum.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by P. J. Donovan against A. Hanauer, Jr. From a judgment for defendant, plaintiff appeals.

REVERSED, AND NEW TRIAL ORDERED.

*Snyder & Snyder* for appellant.

*Henderson, Pierce, Critchlow & Barrette* for respondent.

### APPELLANT'S POINTS.

A good title, is one that can be made good without litigation, and this one was therefore sufficient. (*Moot v. Association,* 157 N. Y. 201; 45 L. R. A. 666; 26 Enc. Law [2d Ed.], pp. 106-7b.)

Thus the term "good and sufficient deed" as used in a contract to convey real estate, relates only to the validity of the deed to pass the title which the vendor has, and does not imply that the title is valid, or free from incumbrances. (*Tinney v. Ashley*, 32 Mass. [15 Pick.], 546, 552, 26 Am. Dec. 620; *Barrow v. Bispham*, 11 N. J. Law [6 Halst.], 110; *Brown v. Covillaud*, 6 Cal. 566, 573.) A covenant to execute a good and sufficient deed does not mean that a perfect title is to be conveyed, but that the deed is to contain good and sufficient covenants. (*Clute v. Robinson* [N. Y.], 2 Johns. 595, 611; *Gazley v. Price* [N. Y.], 16 Johns. 267, 269; *Aiken v. Sanford*, 5 Mass. 494, 499; *Burden v. McElmoyle Bail Eq.* [S. Car.], 379.)

In questioning sufficiency in the matter of this sort, the vendee is bound to act in the utmost good faith; he must act honestly. (Warv. Vend., 300; *Gannella v. McMurray*, 22 So. 98; *Brooklyn v. Railroad*, 47 N. Y. 475; *Miesell v. Insurance Co.*, 76 N. Y. 215.) There must be substance in any objection made. (*Keetel v. Zimmerman*, 43 N. Y. S. 676.)

As to knowledge and notice absolutely controlling such a situation see: Warv. Vendors, secs. 318, 324, 328, N. 32; *Ewart v. Bowman*, 49 S. E. 867; *Coolbaugh v. Rausberry*, 23 Pa. 97; *Breaux & Co. v. Shadel*, 28 So. 292; *Younie v. Walrod* (Iowa), 73 N. W. 1021; *Gooding v. Decker* (Colo. App.), 32 Pac. 832; *Baun v. Raley*, 30 S. E. 713; *Vicroy v. Vicroy* (Ky.), 45 S. W. 75; *Berenbroick v. Hospital*, 48 N. Y. 363; *Easton v. Montgomery*, 90 Cal. 307; *Mayfield v. Turner* (Ill.), 54 N. E. 418. Supporting the foregoing doctrine see: *Gardner v. Gardner* (Iowa), 82 N. W. 522; *Mayfield v. Turner* (Ill.), 54 N. E. 418.

"The burden is on the vendee to point out the defects in the title." (*Dwight v. Cutler*, 3 Mich. 566.) "If the vendor fails within such time to remedy the defects thus pointed out, the purchaser, in any action to recover the purchase money or deposit paid by him, upon the ground that the title is defective, is limited to such defects as were then pointed out." (1 Chitt. Cont., 434; *Todd v. Hoggart*, Moody & M. 128; *Easton v. Montgomery*, 90 Cal. 307, 27 Pac. 280-1; *Moot*

*v. Assn.* [N. Y.], 52 N. E. 1; *Bollifield v. Landrum,* 71 S. E. 979.)

The foregoing is decisive of this case, but, in addition, we insist that in view of all the circumstances and the knowledge of the respondent, appellant would have a reasonable time to make good his title by taking the deed from escrow. It is not necessary that he have the title at the time of the contract if he can deliver it finally on receipt of the money. (*Allstead v. Nicol,* 123 Cal. 594, 56 Pac. 452; *Elder v. Chapman,* 70 Ill. App. 288; *Easton v. Montgomery,* 90 Cal. 307, 27 Pac. 280; *Dresel v. Jordon,* 104 Mass. 407; *Moot v. Ass'n.* [N. Y.], 52 N. E. 1; *Dithridge v. Hausman,* 31 Pitts. L. J. 144; *Hazelton v. Le Duc,* 10 App. D. C. 299; *McNeil v. Fuller,* 28 S. E. 299; 1 Chit. Cont. [11 Amer. Ed.], 431; *Dresel v. Jordon,* 104 Mass. 407; *Townshend v. Goodfellow,* 40 Minn. 312, 41 N. W. 1056; *Smith v. Cansler,* 83 Ky. 371; *Gaither v. O'Doherty* [Ky.], 12 S. W. 306; *Tapp v. Nock,* Id. 713; *Ley v. Huber,* 3 *Watts* 367; *Tiernan v. Roland,* 15 Pa. St. 429.)

### RESPONDENT'S POINTS.

This is a suit to recover a forfeiture expressed as liquidated damages. The party claiming forfeiture must strictly comply with the letter and spirit of the contract. A deed must be tendered as one of the conditions to recover the forfeit. The appellant should have been required to perfect his title before seeking to recover the forfeit. He makes no attempt to secure title to these claims, but allows the bond to lapse and then seeks to recover the forfeit. He does not go into court with clean hands. He is trying to get something for nothing. (*Duncan v. Geysor Co.,* 17 Utah 209; 1 Warvelle on Vendors, sec. 17, p. 347; 2 Warvelle on Vendors, sec. 5, p. 822, sec. 2, p. 819, sec. 8, p. 824, sec. 7, p. 949; 29 Ency. Law [2 Ed.], 608, 610, 667.

FRICK, J.

This action originated in the city court of Salt Lake City, but upon the application of respondent was transferred to the

district court of Salt Lake county for trial. The action is based upon the following agreement: "This agreement made this 1st day of May, 1904, by and between P. J. Donovan of Fay, Nevada, party of the first part, and A. Hanauer, Jr., trustee, of Salt Lake City, Utah, party of the second part, witnesseth: That, for and in consideration of the sum of one dollar and the conditions hereinafter contained, the party of the first part agrees to sell and convey by a good and sufficient title to the party of the second part, his heirs or assigns, the following described mining claims, to wit: Wellington, Wellington No. 2, Jumbo No. 1, Jumbo No. 2 and Lily No. 2 known as the 'Water Claim,' situated in Iron county, Utah. The party of the second part agrees to pay the sum of fifteen hundred ($1,500) dollars on June 15th, 1904, and 150,000 shares of the capital stock of the company, to be incorporated for 500,000 shares, two hundred thousand shares of which is set aside as treasury stock and all of which is nonassessable. The said 150,000 shares to be delivered to said party of the first part at the time of the $1,500 payment, provided the incorporation is perfected by that date. It is further agreed by the party of the second part that in the event of his failure to pay the said $1,500 at the time specified he will forfeit to the party of the first part the sum of five hundred ($500) dollars as liquidated damages. The party of the second part agrees that active development shall be commenced not later than November 1, 1904, and as much sooner as conditions may warrant. It is further agreed and understood, by the parties subscribing hereto that time shall be the essence of this contract." The appellant prayed for judgment for the sum of $499, said sum being the limit of the jurisdiction of the city court, and as constituting the forfeiture mentioned in the foregoing agreement, and based his right to a recovery upon the statement that the respondent had failed to comply with the conditions named in the agreement, namely, the payment of the amount of money therein specified at the time mentioned therein or at any time, and alleged his readiness and ability to perform the conditions of said agreement devolving upon him. Respondent answered, and also set forth

the foregoing agreement in his answer, and averred that he did not sign nor deliver said agreement, but that the same was delivered to one James H. Mahon. He also admits that the $500 mentioned in the agreement as forfeiture was deposited with him, but avers that the same was to be used only in the event that said agreement was signed and executed by him, and in the further event that the appellant had a good title to and would convey the property mentioned in the agreement, and admits that respondent refused to and did not pay to appellant the $500 or any other sum, and avers that, while respondent was at all times able, ready, and willing to purchase and pay for the mining claims mentioned in said agreement, appellant was unable to convey the same to respondent for want of title; that appellant at no time was able or ready to carry out the terms of the agreement, and at no time had the title to said mining claim; that appellant at no time tendered to respondent a deed of conveyance conveying a good and sufficient title to said property. Upon substantially the foregoing issues a trial was had to the court, at which in substance the following facts were developed: The appellant, after introducing the agreement in evidence, proved title in himself on June 15, 1904, by location and possession of the mining claims designated as "Wellington," "Wellington, No. 2," and "Lily No. 2," mentioned in said agreement, and further proved that he on said date had a valid and subsisting option to purchase the Jumbo No. 1 and Jumbo No. 2 mining claims, being the claims mentioned in said agreement, and which option was duly admitted in evidence. He further proved by record evidence that the assessment or representation work had all been performed on all of said claims since their location, including the ensuing year, and that he had a good possessory title to the first three, and would have had to the last two named claims as soon as he would have taken up his option thereon, which expired on August 20, 1904. In other words, appellant proved good title as against all the world, except the United States, which held the fee by reason of ownership of the public lands.

Appellant also testified that the James H. Mahon mentioned in respondent's answer was one of the real parties in interest in the purchase of the claims mentioned in said agreement, that appellant in the spring of 1904 told both said Mahon and respondent of the option he had on the Jumbo claims and that they knew all about it, and that he told them that the $1,500 mentioned as part of the purchase price for said claims was required by him to take up the option on the Jumbo claims. He further testified that he told them that the deed to said Jumbo claims was in escrow, ready for delivery to him as soon as he should pay the money therefor. In short, appellant testified that he told them all about the condition of his title to the mining claims mentioned in the agreement. Respondent denied that he knew or heard anything about the deed being in escrow. He did not directly deny that he was informed or knew about the option, while Mahon does not deny either. To show knowledge of the condition of the title and acceptance of the agreement and its terms and conditions, appellant introduced in evidence the following letters:

"Salt Lake City, April 26, 1904. Mr. P. J. Donovan, Fay, Nev.—Dear Sir: I am going to surprise you by stating that I have arranged to carry through our deal with one exception, namely, that the $1,000.00 payment must be extended until June 15th. Now the proposition stands thus: Five of us agree to put up $500.00 to apply on the payment of the Jumbo bond, and as a guaranty that $1,500.00 will be paid on the said bond June 15th next the said $500.00 shall be forfeited to you in the event of failure to pay the said amount of $1,500.00 at the date specified. This I believe covers the important part of the transaction, and you can rest assured there will be no delay in disposing of all the stock necessary to start work at the earliest possible moment, and which we think will not be later than July 1st next. If this is satisfactory, you can either come up the first of the week, or, if you do not care to incur this expense, we will have a suitable agreement drawn up, and send you for your signature. To save escrow expenses we have decided to make Mr. A.

Hanauer, Jr., trustee, believing that he will be equally acceptable to yourself. Now, don't interpose any objections, for I cannot do any different from this; and, although I say it myself, it is better than I expected could be done. Yours truly, Jas. H. Mahon."

"Salt Lake City, May 3d, 1904. Mr. P. J. Donovan, Fay, Nev.—Dear Sir: I received you letter and note contents. I have referred the matter to Mr. Hanauer, and he stated that he would attend to the matter at once. It has been raining pitchforks here for the past two days, and makes it almost impossible to get around; but I am satisfied that everything is settled so far as the deal is concerned. Yours truly, Jas. H. Mahon."

"Salt Lake City, May 4—04. Mr. P. J. Donovan, Fay, Nevada—Dear Sir: I hereby certify that the sum of $500 (five hundred dollars) has been put in my hands as part payment on bond of $1,500 to be paid on June 15th. If said bond, being bond on 'Jumbo' group as per agreement to be signed between us, is not taken up by said date, then and in such event said $500 are to be paid to you as liquidated damages. Yours truly, A. Hanauer, Jr., Trustee."

"Salt Lake City, Utah, June 7, 1904. Mr. P. J. Donovan, Fay, Nev.—Dear Sir: We received a letter yesterday from the parties with whom we are negotiating the sale of your property, and, whilst it does not state positively they cannot be here by the 15th, between the lines it reads that way to me. Of course, you have it in your power to cinch us for the $500.-00, but we have been acting in the best of faith, and thought we had positive assurance the deal could be closed by the time stated. Yours truly, Jas. H. Mahon."

"Salt Lake City, May 9th, 1904. Mr. P. J. Donovan, Fay, Nev.—Dear Sir: Yours of the 6th with contract inclosed duly to hand, and I see nothing to prevent it from being carried through as agreed. In the meantime I wish you would interest yourself in getting figures as to the cost of sinking a double compartment shaft, vertical, say 5x8 ft. 100 ft. in depth. Can this depth be reached without pumping? Let

me hear from you on this subject as soon as convenient. Yours truly, Jas. H. Mahon."

It further appeared from appellant's testimony that he did not at any time tender a deed conveying the mining claims to respondent, and that he never acquired the title to the Jumbo claims, but would have done so if the $1,500 had been paid to him as agreed by respondent, and that he was prevented from acquiring the title to said claims by reason only of the nonpayment of said money.

The respondent at the time of the trial relied, and now relies on the fact that appellant did not tender him a deed conveying "a good and sufficient title" to the mining claims mentioned in the agreement, and that it appeared that at no time did appellant have title to the Jumbo claims. The court so found, and based its conclusions of law solely on those grounds, and accordingly entered judgment for respondent dismissing the action, from which appellant prosecutes this appeal.

Appellant assigns a great number of errors; but in our view the whole case can be determined upon the one assignment, namely, that the court erred in entering judgment for respondent dismissing the action, and we shall accordingly limit our discussion to this assignment.

The first question to be solved is: What were the obligations assumed by the parties by the terms of the agreement entered into by them? That the agreement was valid, consummated, delivered and acted upon there is no room for doubt. Neither does it admit of serious doubt that respondent was either trustee or agent of both appellant and Mahon, or that he was the agent of Mahon alone, or else an interested party in the transaction, although not mentioned as such. From respondent's letter to appellant above set forth respondent certainly assumed to be the trustee for appellant for the purpose of holding the $500 forfeit money and to receive from him a conveyance either for respondent's own benefit or for the benefit of another. Respondent could not hold the money in any other capacity in view of the statements made by Mahon and by the admissions contained in the letter written

by respondent to appellant. If respondent was the mere agent to hold and pay over the money and receive the conveyance, he was not concerned, except to see that the terms of the agreement were complied with on the part of all who were interested therein. If, upon the other hand, he was a beneficiary therein, then again it was incumbent upon him to comply with the terms of the agreement. In either case neither he nor anyone else, without the consent of appellant either expressed or implied, could impose any other conditions than those named in the agreement itself. What were the conditions imposed on appellant to entitle him to the payment of the $1,500, or, in default thereof, to the right to insist on the payment of the $500 held by respondent as a forfeiture? It seems to us that the terms of the agreement in this respect are clear, unambiguous, and reasonably free from doubt. All the appellant agreed to do, and all that he was required to do, was to make conveyance of "a good and sufficient title," as expressed in the agreement to respondent, of the several mining claims mentioned therein. When was he required to do this? Certainly not before respondent had complied with the conditions imposed upon him by the agreement. What was appellant to receive before he was required to make the conveyance? In this respect the agreement speaks for itself. He was to receive $1,500 in cash, to be paid to him on June 15. 1904, without reservation or condition, and in addition thereto, as part consideration for the mining claims, was also to receive 150,000 shares of the capital stock of a corporation which was to be organized after the agreement was entered into. The $1,500 thus was part payment only for the mining claims. In other words, it was an installment payable unconditionally on the 15th day of June, 1904. If the corporation was then perfected, the 150,000 shares of the capital stock was also to be delivered then. If not perfected, then at least within a reasonable time thereafter. While the evidence is not direct upon the matter, it is fairly inferable therefrom that the corporation was not organized on June 15, 1904, when the $1,500 was due, and hence the capital stock was not ready for delivery. Appellant offered to prove this fact directly, but

was not permitted to do so by the court, but, in view of the established facts, we do not deem this material for the purpose of this decision. It is clear from the agreement that appellant agreed to convey the title only upon the condition that both the $1,500 was paid and the 150,000 shares of stock delivered to him. Neither did appellant covenant that he had a "good and sufficient title" to the mining claims at the time the agreement was entered into, nor that he would have it on the 15th day of June, 1904. All that he agreed to do was to convey a "good and sufficient title" upon the payment of $1,500 and the delivery of the 150,000 shares of the capital stock. The promise to pay to him the $1,500 on June 15, 1904, was unconditional, and the agreement to forfeit the $500 in case of nonpayment on that day was likewise free from condition. This is the agreement; and neither the court nor either of the parties could impose other conditions without the consent of the parties against whom they were sought to be enforced. The mere fact that appellant did not have a "good and sufficient title" to all of the mining claims at the time of entering into the agreement or at the time the $1,500 was payable, in view of the terms of the agreement, would not authorize the respondent to refuse payment of the amount then due. There is abundant authority to this effect. Among other cases are the following: *Easton v. Montgomery,* 90 Cal. 307, 27 Pac. 280, 25 Am. St. Rep. 123; *Burks v. Davies,* 85 Cal. 114, 24 Pac. 613, 20 Am. St. Rep. 213.

The respondent had a perfect right, if he felt disposed to do so, to agree to pay unconditionally any part of the purchase price at any time, and likewise to agree that in case of a failure to pay to stipulate for a sum to be paid as liquidated damages. The appellant likewise had the same right to agree to sell one or more of the mining claims to which he did not then have title, and that he would convey a good and sufficient title upon the performance of all of the conditions assumed by respondent. Appellant had the right to enter into such an agreement for the purpose of using the money agreed to be paid to him to acquire the full title he agreed to convey. If respondent entered into such an agreement, upon what legal

right can he refuse to make the payment by which appellant might have been enabled to comply with the conditions imposed on and assumed by him? In such a case, unless the agreement against the party promising to pay is enforced, the party promising to convey, unless he has other means or credit, must, of course, fail in his undertaking. Can the first party by simply saying that the second party has not the title he agreed to convey at the time part payment is to be made defeat the second party's right to recover the sum fixed as for liquidated damages, and which the first party agreed to pay in case the installment of the purchase price stipulated for is not paid? To so hold denies the right to a party to agree to sell and convey title without having it, and it further results in refusing to enforce an agreement expressly entered into between the parties. The respondent in this case could, as a matter of course, have refused to pay the $1,500, and appellant would have had no cause of action against respondent therefor. But this is so because they specially agreed that, if payment of that sum was refused or withheld, the failure to do so was compensated by the payment of the $500. Had it not been for this provision, the appellant might have had a cause of action against respondent for greater damages for the breach of contract. But since the parties expressly stipulated in this case what the damages should be and for what causes they should arise, which they had a right to do, appellant was limited to the amount of damages stipulated in the agreement itself. It is no answer for respondent to now urge that he was not justified in paying the money, since it appeared that appellant did not have a "good and sufficient title" to the mining claims agreed to be conveyed by him at the time the payment of the $1,500 became due. Respondent might have so framed the agreement with appellant's consent. This, however, he failed to do, and respondent agreed unconditionally either to pay $1,500 on the date named, or, in case of failure to do so, to pay to appellant the $500 held by him for that purpose. The $1,500 he had a right to withhold either because he thought appellant could not convey a "good and sufficient title," or for any other reason, but not so the $500

without violating the conditions of his agreement. When respondent accepted the agreement, he took his chances in respect to appellant's ability to ultimately convey a good title. If respondent complied with the terms of the agreement, and appellant failed to convey a "good and sufficient title," then the courts were open to respondent for the purpose of aiding him in recovering any damages caused by reason of appellant's failure to convey as he had agreed to do. Respondent, however, had no legal right to refuse to comply with the payment stipulated for on the 15th day of June without incurring liability by simply saying that appellant was not then able to convey the title he had agreed ultimately to convey. The fact that, by complying with the agreement, respondent incurred the risk of ultimately not obtaining good title, is precisely the risk he assumed by entering into the agreement. As to whether a court of equity might, under certain circumstances, relieve him from strict performance of the agreement, we need not now consider. It is quite sufficient to know that a court of law will not permit a party to enter into a valid agreement, and then violate its terms, without compelling him at least to pay the damages stipulated to be paid by him for such violation. This is just this case. While respondent might have guarded against such consequences, he deliberately chose not to do so, but relied on the court to do it for him. But courts do not make contracts. They either enforce them or grant appropriate redess for their violation. In this case the respondent did not choose to permit a court or jury to assess the damages in case of his failure to perform, but he stipulated just what they should be, and we know of no legal or valid reason why he should not comply with the agreement he himself has voluntarily entered into.

In the view we have taken, it becomes unnecessary to determine what constitutes a "good and sufficient title" to mining claims. The payment of the $500 was not conditioned on whether appellant had a good title or not. It was expressly conditioned on the failure to pay the $1,500 at the time fixed. Appellant agreed to convey only upon the express condition that both the $1,500 should be paid and the 150,000 shares

of stock delivered. There is thus no question in this case that the law implied the' condition that appellant should have good title before the respondent could be required to pay the $1,500. That payment was to be made unconditionally, and the forfeiture of the $500 was to take place upon the failure to pay.. All these things are expressed; and it is elementary doctrine that, where there is an expressed condition, there cannot be also an implied one upon the same matters. In any event, under the terms of the agreement, the payment of the $1,500 and the conveyance of the title were not concurrent nor dependent acts, and thus the appellant would have had a reasonable time after full performance, or offer of performance, by respondent, to convey a "good and sufficient title." Respondent, however, demanded performance upon the part of appellant at a time when appellant was not required to act, while respondent was. For this contingency the agreement provided the forfeiture, which is all appellant is asking for in this case. The legal proposition involved is thus as if the respondent had, for a good consideration to be paid by appellant, agreed to advance appellant a sum of $1,500 on a day named, and had agreed to forfeit $500 in case the money was not advanced on that day, and on the day so fixed the consideration agreed to be paid by appellant was not yet due or payable. In such a case it would be no defense for respondent to urge a lack of security to insure the payment agreed to be paid by appellant. Respondent, having agreed to do a thing unconditionally, must do so, or pay the forfeiture by him agreed to be paid in lieu thereof. Having entered into the agreement, and having failed to comply with its terms, he must abide the consequences imposed by law.

We desire to remark, in conclusion, that we deem it unnecessary to pass upon what is meant by the term "a good and sufficient title," as contained in the agreement. While the circumstances and evidence are persuasive, to say the least, that by that term the. parties meant no more than the usual possessory title to mining claims before issuance of patent, we need not determine the question and do not do so. If the parties agreed upon that quality of title, then the appellant

would have to convey it and no more. If, however, they agreed upon a higher quality, then it does not change the result in view of the grounds upon which we base appellant's right to recover in this action.

The judgment is reversed, with directions to the court to grant a new trial and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.