## SEDALIA MINING & MINERAL CO. v. SHARP.

(District Court, D. Kansas, First Division. November 21, 1923.)

### No. 2151.

Mines and minerals ⬤—64—Provision of contract for forfeiture on default of purchaser held mutually binding.

An executory contract for the sale of mining rights and equipment on property held by seller under a lease having less than three years to run, for which the buyer was to pay in monthly installments, but did not give notes, after reciting the necessity of pressing the mining work because of the short term of the lease, provided that, because of the impossibility of estimating seller's damages in case payments were not made as agreed, time should be of the essence of the contract, and on default for 30 days in making any payment all rights granted should be forfeited, seller might re-enter and retain all payments made as liquidated and agreed damages. Held, that such provision was mutually enforceable and should constitute the measure of seller's rights in case of default, and that it could not sue at law to recover the full purchase price.

At Law. Action by the Sedalia Mining & Mineral Company against Alex A. Sharp. Judgment on the merits for defendant.

Leslie J. Lyons, of Kansas City, Mo., and Webster & Webster, of Miami, Okl., for plaintiff.

Farrelly & Evans, of Chanute, Kan., and Stone, McDermott & Webb, of Topeka, Kan., for defendant.

⬤—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

POLLOCK, District Judge. This case is an action at law to recover on a contract in writing entered into between the parties, as follows:

"This agreement, made and entered into this 16th day of April, 1920, by and between the Sedalia Mining & Mineral Company, a corporation of Sedalia, Missouri, party of the first part, and Alex A. Sharp, of Topeka, Kansas, party of the second part, witnesseth:

"That the said party of the first part, by its agent, W. T. Wallace, duly authorized to make this contract, does hereby grant, bargain, and sell to the party of the second part all of its right, title, and interest in and to its mining rights and privileges in and covering the northwest quarter (N. W. ¼) of the northeast quarter (N. E. ¼), of section twenty-five (25), township twenty-nine (29), range twenty-three (23), in Ottawa county, Oklahoma, including all the mining development, ore, or ore bearing rock or substances, and all mining machinery and connections thereto, excepting only: (1) Two upright 40 horse-power boilers, with connections. (2) One 8x8 Samson hoist with cable and attachments. (3) One blower. (4) One old Snow pump, with suction, not in use. (5) All hand tools belonging to J. G. O'Dell. (6) One Crabb machiner. (7) Buildings occupied by ——— Porter, a tenant at sufferance. (8) Two Shieve wheels, belonging to J. G. O'Dell.

"This conveyance includes also an assignment to the party of the second part of the certain contract for a mining lease made by the Commerce Mining & Royalty Company, J. E. Potorff, and W. M. Smith, lessors, to W. T. Wallace, lessee, bearing date of August 6, 1917, and covering the lands above described; and the said party of the second part hereby assumes the obligations of the lessee therein from date hereof, and is entitled to all its benefits from this date. The consideration paid and to be paid by the party of the second part to the party of the first part is $50,000, of which sum $15,000 is to be paid in cash, to be deposited with this contract in escrow with the First National Bank of Joplin, Missouri, to be paid to the party of the first part by said bank as soon as the board of directors of the party of the first part make satisfactory proof to said Alex A. Sharp of the ratification of this contract. The balance of the purchase price shall be paid, $2,500 on July 1, 1920, and $2,500 on the 1st day of each succeeding month, until the full purchase price is fully paid.

"It is further agreed between the parties hereto that the party of the second part shall be placed in immediate possession of the mining property herein conveyed, upon the signing of this contract. That the mining rights and privileges herein conveyed will expire on January 1, 1923, and in order to make mining profitable for so short a period, it is necessary that mining operations be pressed with diligence and dispatch, and because it is impossible to estimate the damages that might accrue to the party of the first part, in the event the party of the second part fails or refuses to make the payments herein provided, it is agreed that time is of the essence of this contract, and that upon the failure of the party of the second part to make any payment herein provided, and is in default thereof for a period of thirty (30) days, that the mining rights herein conveyed shall become forfeited to the party of the first part, who may thereupon re-enter and take possession of said mining property, and retain and be the owner. thereof, including all machinery and equipment herein conveyed, but excluding from such forfeiture any machinery and equipment placed thereon by the party of the second part, and all payments made prior to such forfeiture shall be retained by the party of the first part, as liquidated and agreed damages for a failure to carry out this contract.

"It is further agreed that the party of the first part shall pay all outstanding obligations for material, labor, or otherwise, up to and including April 16, 1920.

"In witness whereof the parties hereto have signed this instrument this 16th day of April, 1920.

"[Signed]   Sedalia Mining & Mineral Co.,

"By W. T. Wallace, Agt.                                    Alex A. Sharp."

By way of defense there are pleaded some equitable matters as a ground to reform the contract for mutual mistake and other matters, not now here necessary to be considered. The vital question presented is the true legal rights and liabilities of the parties thereunder, in view of all the facts of the case, the known circumstances of the parties, the time it was entered into, and the subject-matter of the contract. In this respect it is the contention of defendant, who made the down payment of $15,000 stipulated in the contract and expended an additional sum of some $40,000 in development work on the property without profit to himself therefrom, but who did not make the other payments falling due thereafter, that a provision of this contract calling for a settlement on stipulated or liquidated damages is valid, binding, and mutually enforceable on the parties thereto, and the rights of plaintiff on breach of the contract by him are measured by and limited to this stipulation.

On the contrary it is the contention of plaintiff the contract is one of actual sale and purchase, the contract of defendant is an absolute and unconditional promise to pay the purchase price, and that the provision for liquidated damages is one reserved merely for the benefit of the seller; that provisions of this character, unilateral in their nature and operation, may be and often are inserted for the sole benefit and protection of the seller, without impairing the obligation of the contract for want of mutuality. The contract here in suit is not a contract for the sale and purchase of real estate. On the contrary, it is a contract of sale of merely personal property rights.

Whether a forfeiture provision similar to that employed in the contract in suit in this case, and often decreed in executory contracts for the purchase and sale of real property to have been inserted for the sole benefit and protection of the vendor and to be by him enforced or disregarded at his election (as in Stewart v. Griffith, 217 U. S. 323, 30 Sup. Ct. 528, 54 L. Ed. 782, 19 Ann. Cas. 639), will be so regarded in executory contracts for the purchase and sale of purely personal property rights, as in the instant case, I do not find to have been authoritatively decided. However, I do find such provisions, when inserted in executory contracts for the purchase and sale of real property, regardless of the language employed, and whether a stipulation for liquidated damages in case of breach or by way of a penalty, very generally, if not unanimously, held to be solely for the benefit of the vendor. Stewart v. Griffith, supra; Raymond v. San Gabriel Land & Water Company, 53 Fed. 883, 4 C. C. A. 89; Donahoe v. Franks (D. C.) 199 Fed. 262, and the many other cases on the subject. On the contrary, there are cases involving executory contracts for the sale of personal property rights, such as mining rights, which hold provisions for stipulated damages in case of breach by the vendee are valid and binding. Clark v. Rosario Mining Company, 176 Fed. 180, 99 C. C. A. 534; Mining Company v. Jacobson, 30 Utah, 115, 83 Pac. 728, 4 L. R. A. (N. S.) 755; Donovan v. Hanauer, 32 Utah, 317, 90 Pac. 569.

It is very generally held, in any case where a decree for specific performance would be granted the purchaser, a judgment for the purchase price will be awarded the seller. In cases of contracts of sale and

purchase of personal property, decrees for specific performance will seldom be granted; the parties being relegated to their action at law for damages for a breach. Shubert v. Woodward, 167 Fed. 47, 92 C. C. A, 509. Again, executory contracts for the purchase and sale of personal property, to be binding, must be mutual in all their terms and provisions. Whether the rule that provisions on forfeiture for liquidated damages contained in executory contracts for the purchase and sale of real property were inserted solely for the benefit of the vendor, if applied to contracts for the purchase and sale of personal property would render them unilateral, might well be contended. However, the question here now to be determined is this:

Was it the intention of the parties, if the contract was broken by defendant in making payments of the purchase price, it should be settled and ended by the re-entry of plaintiff upon the premises and a retention of all sums of money paid by defendant under the terms of the contract at such date? There are many things arising on the face of the contract itself, and some from the evidence introduced on the trial, added to the making of the contract, which incline the mind to this view of the case. For example, the contract concerns itself with the right of parties to exercise the mere privilege of possession, coupled with the right to explore for minerals and take those of value found from the property, as such rights had been by the owner of the land granted to another for a very limited period of time. This being the condition of the subject-matter of the contract, it was of pressing importance that development work should proceed on the property with all dispatch, and be proceeded with all diligence and vigor, lest mere delay should eat up all of value described in the contract.

In this condition of affairs, that plaintiff might protect itself against such contingencies, the contract, after describing with accuracy the condition of the property, makes three important provisions: (1) Time of payment is made of the very essence of the contract itself. (2) In case of any default in payment of any sum stipulated to be paid by defendant for 30 days, all right of defendant in the property is forfeited, and the plaintiff again becomes the absolute owner. The right of re-entry in case of forfeiture on the premises is reserved. (3) Because the parties agreed it was impossible to estimate the damages which might flow from a breach by defendant to make the stipulated payments, but on such forfeiture of rights all payments theretofore made by defendants under the terms of the contract shall be retained by the party of the first part as liquidated and agreed damages. This being the language of the contract itself, and taking into consideration the fact shown by the evidence, defendant refused at the time to make his obligations in the form of notes as evidencing deferred payments provided by the contract, and the further fact that the contract itself, while stating and declaring the consideration to be paid and the terms of payment, nowhere contains an express and absolute promise on the part of defendant to pay the entire purchase price, all considered, induces me to hold the parties provided their own manner of settling the damages which might flow from a breach of the contract by defendant to pay the stipulated price in exact time and manner as stated

in the contract. As said by Mr. Justice Swayne, delivering the opinion of the court in Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050:

"As the meaning of the lawmaker is the law, so the meaning of the contracting parties is the agreement. Words are merely the symbols they employ to manifest their purpose, that it may be carried into execution. If the contract be unsealed and the meaning clear, it matters not how it is phrased. * * * The intent developed is alone material, and when that is ascertained it is conclusive."

I am convinced from the circumstances under which the contract in suit was made, the language employed therein, the peculiar nature of the rights in the property reserved to plaintiff, and all the other facts and circumstances of the case under which the contract was made, it was not the intent of the parties as expressed therein the damages flowing to plaintiff from any breach of the terms in making payment should be determined by an action at law to recover the unpaid purchase price, for the parties expressly stipulated in their contract as follows:

"And because it is impossible to estimate the damages that might accrue to the party of the first part, in the event the party of the second part fails or refuses to make the payments herein provided, it is agreed that time is of the essence of this contract, and that, upon the failure of the party of the second part to make any payment herein provided and is in default thereof for a period of thirty (30) days, the mining rights herein conveyed shall become forfeited to the party of the first part, who may thereupon re-enter and take possession of said mining property, and retain and be the owner thereof, including all machinery and equipment herein conveyed, but excluding from such forfeiture any machinery and equipment placed thereon by the party of the second part, and all payments made prior to such forfeiture shall be retained by the party of the first part as liquidated and agreed damages for a failure to carry out this contract."

Therefore it must have been the intent of the parties that on breach of payment of any installment of the purchase price the plaintiff was to re-enter and treat the contract as terminated, the same as if it had never existed. In this view of the case judgment must go for defendant.

It is so ordered.