THOMAS v. FOULGER et al.

No. 4572. Decided January 23, 1928. (264 P. 975.)

276

*J. E. Evans* and *C. R. Hollingsworth,* both of Ogden, for appellants.

*Stuart P. Dobbs,* of Ogden, for respondent.

HANSEN, J.

The defendants prosecute this appeal from a judgment rendered in a mortgage foreclosure proceeding. The facts forming the basis of the decree of foreclosure are not in dispute. On January 17, 1922, the plaintiff and the defendants Albert B. and Herbert B. Foulger entered into a written contract whereby the plaintiff agreed to sell and Albert B. and Herbert B. Foulger agreed to buy 249½ shares of stock in Last & Thomas, a corporation, for the sum of $35,000. The defendants Rachel E. Foulger and Isabel Foulger were not parties to the agreement, but were made parties to the foreclosure proceeding because they were the wives of Albert B. and Herbert B. Foulger, respectively. For convenience in this opinion we shall disregard the wives and use the word "defendants" as including Albert B. and Herbert B. Foulger only. The contract so entered into between the plaintiff and defendants provides that seven promissory notes should be executed by defendants payable to plaintiff, one for $2,000, one for $8,000, and five for $5,000, each. The $2,000 note and the $8,000 note were both payable on demand. One of the $5,000 notes was to mature January 17, 1923, one January 17, 1924, one January 17, 1925, one January 17, 1926, and one January 17, 1927. The notes were to be secured by 111 shares of stock in the Burton Creamery Company and a mortgage upon certain real estate

situated in Weber county, Utah, and particularly described in the contract. The contract also provides that one share of the stock of Last & Thomas, a corporation, should be, and the same was immediately, transferred to each of the defendants so that they could become stockholders and directors of the corporation; that plaintiff should retain the remainder of the stock until the defendants paid for the same when it should be delivered to the defendants; that the defendants should be given proxies to vote the stock held by the plaintiff so long as the defendants complied with the terms of the contract. The notes and mortgage were executed and delivered to the plaintiff as provided in the contract, and the certificate for 111 shares of capital stock in the Burton Creamery Company was also delivered to the plaintiff. The defendants became directors of Last & Thomas, a corporation, and continued to act as such directors until the corporation was dissolved.

The plaintiff offered and the trial court received in evidence the files in case No. 9174, civil, of the district court of Weber county, Utah. The documents thus received in evidence are not made a part of the bill of exceptions and are not brought up for review on this appeal. The court made findings of fact evidently based upon the proceedings had in said case No. 9174, civil; and in the absence of any showing to the contrary we must assume such findings are supported by the evidence. The trial court found:

"That on February 17, 1925, litigation was pending between the defendant Herbert B. Foulger, as defendant, and one of the other stockholders of said corporation, Marjory T. Condie, in which action, on or about said date, by stipulation, the plaintiff, said corporation, and all other stockholders of said corporation except the defendants Albert B. Foulger and Herbert B. Foulger, became parties plaintiff, and the defendant Albert B. Foulger was added to Herbert B. Foulger as party defendant, all of such parties joining in such stipulation, which further provided for a determination of certain disputes between the plaintiffs and defendants with reference to the management and division of assets of the corporation by said court, and pro-

vided that upon the same being determined a dissolution of such corporation should be had for the division of any assets remaining, the individual plaintiffs in said action as a whole to receive one-half, and the defendants, Albert B. Foulger and Herbert B. Foulger to receive one-half. That on February 17, 1925, a meeting of the stockholders of said Last & Thomas was had with all stock represented, the defendants being present and voting 249 shares of stock, at which a resolution was adopted reciting that it appeared that all stockholders of said corporation had agreed among themselves as to a method of liquidating the assets of said corporation, and distributing the same after payment of the incorporate indebtedness, and providing for dissolution of said corporation and liquidation of its assets in accordance with said agreement. That on the same date a meeting of the board of directors of said corporation was had, plaintiff, both said defendants, and one other director being present and acting as directors, at which the minutes of said stockholders' meeting were read and approved unanimously, payments of debts was directed, such stipulation was approved, and joinder of such corporation in said action was authorized. That both said defendants were present at each of such meetings.

"That after the determination of the questions presented by such stipulation, the court entered its decree in said action directing distribution of the assets of such corporation, after its dissolution had been had pursuant to the provisions of such stipulation, the said decree providing that the same was a full settlement of all matters between the parties to such action arising out of such litigation or out of the conduct of the affairs of such corporation, or connected therewith, except the rights of the defendant Mae Thomas to receive the balance due her for the capital stock of said corporation sold by her to the defendants, and to enforce all rights of security and retain all security she has thereupon, the same as if said stipulation had not been made, and that all rights of said Mae Thomas under and arising out of said sale against the defendants or either to receive such balance of such purchase price, and enforce her security therefore should be reserved from the effect of the decree herein entered. That thereafter dissolution of such corporation was had, and thereafter and about August 12, 1925, the matter of distribution of the assets of such corporation came before the court in such action between the stockholders, at which time the plaintiff herein filed her petition setting out in full that certain contract referred to in the first paragraph of these findings, and reciting that the defendants then were in default in their payments thereunder, and asking that the court determine what, if any, right title or interest said plaintiff

might have in and to the assets of such corporation which by the terms of such decree were to pass to and be distributed to the said defendants Herbert B. Foulger and Albert B. Foulger, the defendants making no answer to such petition, but being served therewith and represented at and taking part by counsel in the hearing thereon, at which time the court made its order that that part of the assets represented by the said 249½ shares of stock so sold by plaintiff to the defendants should pass to the said defendants free of any lien upon the part of said plaintiff.

"That said defendants had defaulted in payment of interest when due several times prior to February 17, 1925, and were in default on and at all times after July 17, 1925, and at the time said last mentioned hearing and proceeding was had. That nevertheless the said defendants received in such proceeding all that part of the assets of said corporation to which the said stock, so sold them under said contract, would have entitled them if the said stock had been paid for in full, and that by reason of such proceedings, and with the consent of the plaintiff and said defendants, the said stock became of no value whatsoever, and all assets of such corporation which on the winding up thereof should pass to the owner of such stock have passed to the said defendants Albert B. Foulger and Herbert B. Foulger, and the plaintiff has no security for the payment of the unpaid balance of such purchase price except the said mortgage and her lien upon said capital stock. That in the said proceedings the said defendants acted as and were treated as the owners of such stock, and still have and claim to hold and own the avails of the same so distributed, and have become equitably possessed of such stock, and participated in such meetings as the owners of such stock, and by reason of such matters, and by reason of such conduct on the part of the defendants, they now are estopped from claiming that plaintiff's only remedy under her said contract with them by reason of their failure to pay the balance due thereon was and is a forfeiture of their interest in such stock."

Prior to the commencement of this action the defendants paid all of the notes executed and delivered by them to the plaintiff except two. The notes for $5,000 each and maturing on January 17, 1926, and January 17, 1927, were not paid, and this action was begun for the collection of these two notes. The interest on these notes was paid up to July 17, 1925, but not thereafter. The complaint in this action

was filed in the district court of Weber county, Utah, on April 13, 1926. Upon issues joined by plaintiff's complaint, the defendants' answer, and plaintiff's reply, the court tried this case and rendered judgment for the amount unpaid on the two $5,000 promissory notes, and ordered the 111 shares of capital stock of the Burton Creamery Company and the real estate covered by the mortgage sold and the proceeds of the sale applied upon the judgment.

The defendants, by various assignments of error, assail the judgment and decree of foreclosure upon three grounds, namely: (1) That the note made payable on January 17, 1927, was not due and owing at the time this action was brought and that the complaint is defective in not alleging facts showing that such note was due; (2) that the evidence does not show that plaintiff ever delivered or tendered delivery of the stock to the defendants which constitutes the consideration for the notes sued upon; (3) that under the contract for the sale of the stock in Last & Thomas, a corporation, plaintiff's exclusive remedy after the payment of the $2,000 and $8,000 notes was to retain the money paid as liquidated damages for any breach of the contract on the part of the defendants.

The note made payable on January 17, 1927, reads thus:

"January 17, 1927, after date, for value received, the undersigned promises to pay to the order of Mae Thomas at the National Bank of Commerce of Ogden, Utah, at its banking house in Ogden, Utah, five thousand and no/100 dollars in U. S. gold coin, with interest payable quarterly at the rate of 6 per cent per annum from date until paid, both before and after judgment, together with a reasonable attorney's fee, if this note is collected by an attorney either with or without suit. If the interest is not paid when due the holder may proceed to collect both principal and interest. The makers and indorsers of this note each expressly waive demand, notice of nonpayment and protest, and suit against the maker; and also agree that this note may be extended in whole or in part without their consent. We and each of us, for value received, jointly and severally pledge our sole estates for the payment of this debt."

.The real estate mortgage given to secure the notes contains this provision:

"It is further expressly agreed that should default be made in the payment of any installment of interest or principal as in said note provided, and should the same remain unpaid and in arrears for the space of 60 days, the holder of said note may declare the principal sum mentioned therein to be due and payable immediately, and may proceed at once to foreclose this mortgage, anything hereinbefore written or in said note to the contrary notwithstanding."

It will be observed that the interest on the note above set out was payable quarterly and that the note provides that "if the interest is not paid when due the holder may proceed to collect both principal and interest." All of the evidence shows that the interest on the note payable January 17, 1927, was paid up to July 17, 1925, but not thereafter. At the date this action was begun the defendants were in arrears two quarterly interest payments and therefore under the terms of the notes the plaintiff, as holder thereof, "may proceed to collect both principal and interest."

According to the great weight of authority, when a note contains a provision accelerating the date of maturity if the interest is not paid when due, the holder of such note is not required to give notice of an election to declare the note due as a condition precedent to bring an action for its collection. 19 R. C. L. § 294, p. 498; 8 C. J. § 611, p. 471. In addition to the cases cited in the footnotes in support of the foregoing texts, the cases of *Day* v. *Hogans et al.*, 130 Miss. 128, 93 So. 578, 26 A. L. R. 1028, and *Harrison* v. *Beals,* 111 Or. 563, 222 P. 728, are directly in point and support the general rule.

In paragraph 3 of the complaint it is alleged that:

"There is due thereon (the notes) the principal sum of $10,000 with interest at the rate of six per cent. per annum from July 17, 1925, all installments of interest on each note being now due and unpaid and

that by the terms of such notes the whole sum represented by said notes now is due and payable from the defendants to the plaintiff."

Copies of the notes are attached to and are made a part of the complaint. This pleading is clearly sufficient to withstand a general demurrer as to the note falling due January 17, 1927, and the fact that the interest payments were past due and unpaid on such note sustains the finding that the note was due.

As we understand defendants' position, it is that the plaintiff is not entitled to recover on the two notes for the principal sum of $5,000 each until she has delivered or tendered delivery of the certificate for all of the stock sold in Last & Thomas, a corporation. If the certificate for the stock represented anything or was of any value there would be more merit to such contention. The contract between the plaintiff and the defendants contains this provision:

"That upon the full payment of the said sum of $35,000 agreed to be paid by said second parties (the defendants) with interest thereon as hereinbefore set out, then said first party (plaintiff) shall deliver to said second parties certificates of stock representing 247½ shares of stock of the said Last & Thomas Corporation, and shall have the same duly transferred to said second parties upon the books of the said corporation."

The delivery or transfer of the stock and the final payment of the purchase price are concurrent conditions, and the plaintiff was not in default until the defendants paid or tendered payment of the full purchase price. There is, however, another good and sufficient reason why the defendants may not defeat plaintiff's cause of action because the stock in Last & Thomas, a corporation, was not delivered or delivery tendered to the defendant. All of the assets of the corporation were distributed to the stockholders of the corporation and the corporation was dissolved before this action was begun. The defendants received and retained all the assets to which they were entitled as owners

of the stock purchased from the plaintiff. It is difficult to conceive that the certificate representing no assets in the dissolved corporation has any value. The failure to deliver such a piece of paper cannot justify the repudiation of the obligation of $10,000 and accrued interest thereon. The plaintiff had substantially if not fully performed her part of the contract with the defendants before she began this action. We agree, however, with appellants that there is no evidence to support the finding that "plaintiff" in open court offered to deliver the said stock of Last & Thomas to said defendants which tender was rejected upon the ground that said stock was of no value." The error is harmless, as the finding is not necessary to support the judgment.

It is also urged on behalf of appellants that the contract between plaintiff and defendants for the sale of the stock in Last & Thomas, a corporation, limits plaintiff's rights to merely retain the payments made on the stock before this action was begun. The provision of the contract relied upon to support this contention reads thus:

"It is further agreed that if said second parties shall fail to make any of said payments of principal or interest when the same shall become due, or shall fail to keep and perform any other of the terms and conditions of this agreement, then said second parties shall forfeit all rights hereunder, and said first party shall be relieved from all obligations in law and in equity to transfer the said shares of stock or any part thereof to said parties of the second part, and said first party may at any time revoke any and all proxies or powers of attorney authorizing the said second parties to vote any of the capital stock of the said corporation at any stockholders' meeting thereof, and in case of such forfeiture said first party may retain all amounts paid to her by said second parties as a part of the purchase price of the said stock as stipulated damages for the failure of said second parties to comply with the terms and provisions of this agreement. Provided, that in no event shall said second parties be relieved from the payment of said demand notes of $2,000 and $8,000 respectively, by reason of any forfeiture of this contract, and notwithstanding any such forfeiture by reason of a failure to comply with any of the terms and conditions hereof by said second parties, said party of the first part may collect said notes in full, and may resort to said collateral security, and to the said mortgage therefor."

It will be observed that by the terms of the contract the two notes for the principal sums of $2,000 and $8,000 were to be paid at all events. It will also be observed that if the defendants failed to perform any of the terms and conditions of the contract they thereby forfeited all rights in law and equity to have the shares of stock transferred to them and the plaintiff might retain all amounts paid to her as stipulated damages. It is appellants' contention that the right to declare a forfeiture of the money paid is her only remedy. In support of such contention the following authorities are cited: 17 C. J. pp. 931, 932; *Pacific Hardware Co.* v. *United States*, 49 Ct. Cl. 327; *Wood* v. *Ocean City*, 85 N. J. Eq. 328, 96 A. 489; *Donovan* v. *Hanauer*, 32 Utah 317, 90 P. 569; *Mining Co.* v. *Jacobson*, 30 Utah 115, 83 P. 728, 4 L. R. A. (N. S.) 755; 13 Cyc. 90; 2 Page on Contracts, § 1171; *Rose* v. *Garn*, 56 Utah, 533, 191 P. 645; *Cooley* v. *Call*, 61 Utah, 203, 211 P. 977. The law is well settled that parties in making a contract are at liberty to fix the amount which shall be paid by either to the other as compensation for an anticipated actual loss or injury which they in good faith believe will result from a breach, if one should occur. When the amount of stipulated damage is reasonable as compared with the amount of actual damage and not in the nature of a penalty the courts will enforce the provisions stipulating damage according to the intention of the parties as evidenced by the terms of the contract. Such in general is the law as announced by the authorities cited by appellants. In this case the contract between the plaintiff and defendants is in no sense an option to purchase stock. The plaintiff agreed to sell to the defendants 249½ shares of stock in the Last & Thomas Corporation for the sum of $35,000 and upon receipt of the money she agreed to transfer the stock to the defendants. The defendants agreed to pay the sum of $35,000 for the stock. The plaintiff has in no way breached her part of the contract, but, on the contrary, the defendants have received all that the plaintiff agreed to convey to them, unless it be the worthless certifi-

cate of stock in a dissolved corporation. While the parties to a contract may, in a proper case, fix the amount which the defaulting party shall pay for a breach of the contract, we find it difficult to conceive of a situation where the defaulting party can escape an absolute liability because he himself is in default. When the defendants accepted and retained all that they purchased the obligation to pay the amount that they agreed to pay became absolute. This is merely requiring the defendants to perform the express provisions of their contract. Much might be said in favor of the view that the provisions of the contract above quoted were made for the sole benefit of the plaintiff, but such discussion would add nothing to this opinion and would be a mere repetition of what is said in the cases of *Rose* v. *Garn* and *Cooley* v. *Call*, supra, where the cases bearing upon this question are collated. It may also be observed that by reason of the trial court's finding hereinbefore quoted as to what was determined in case No. 9174, civil, in the district court of Weber county, Utah, the defendants are precluded from the defense that the plaintiff is without a remedy except to retain the money paid upon the stock purchased by the defendants. So far as appears, no appeal has been taken from the judgment, and in any event, the defendants having accepted the benefits of such determination by receiving and retaining the assets represented by the purchased stock, they cannot escape the liability imposed upon them by the adjudication.

We have examined all of appellants' assignments of error and find no prejudicial error.

JUDGMENT AFFIRMED.

Respondent is awarded her costs.

THURMAN, C. J., and CHERRY, STRAUP, and GIDEON, JJ., concur.