326 P.2d 712

Lorin PECK and Mary C. Peck, his wife, Plaintiffs and Respondents,

v.

William Reed JUDD, Jr. and Theda W. Judd, his wife, Defendants and Appellants.

No. 8721.

Supreme Court of Utah.

June 9, 1958.

------◆------

Dean W. Sheffield, Salt Lake City, for appellants.

Cannon & Duffin, Salt, Lake City, for respondents.

WORTHEN, Justice.

Appeal by defendants from a judgment enforcing the forfeiture of defendants' rights under a Uniform Real Estate Contract, terminating the same and allowing plaintiffs to retain all payments made thereon by defendants.

Plaintiffs and defendants on October 25, 1950, following a listing of the property mentioned herein with the Salt Lake Real Estate Board Multiple Listing Bureau and following the execution of an Earnest Money Receipt and Agreement, executed a Uniform Real Estate Contract which provided for the sale by plaintiffs to defendants of properties known as 121 to 137 East 7th South and 658 to 664 Edison Street, consisting of 23 apartments, for the price of $75,000, payable $10,700 down and $600 or more each month. The contract contained the following stipulation:

"In the event of a failure to comply with the terms hereof the Buyer, or upon failure to make any payments when the same shall become due, or within thirty days thereafter, the Seller, shall, at his option, be released from all obligations in law and equity, to convey said property and all payments which have been made theretofore on this contract by the Buyer, shall be forfeited to the Seller as liquidated damages for the nonperformance of contract, and the Buyer agrees that the Seller may, at his option, re-enter and take possession of said premises without legal process as in its first and former estate, together with all improvements and additions made by the Buyer thereon, and the said additions and improvements shall remain with the land and become the property of the Seller, the Buyer becoming at once a tenant at will of the Seller. It is agreed that time is the essence of this agreement."

It is conceded by defendants they were unable to make their payments and were in arrears at the time suit was commenced, and that on November 30, 1955, said arrearage was in excess of $13,500.

On March 14, 1955, plaintiffs served a notice on each defendant to reinstate the contract by payment of the delinquent amounts due and owing in the total amount of $10,734.64 within 30 days, on failure of which the contract of sale would be terminated.

On May 20, 1955, no payment or tender having been made on said delinquencies, plaintiffs served upon each defendant a notice of forfeiture, declaring all payments theretofore made on said contract forfeited as liquidated damages and terminating all rights claimed by defendants in and to said property and by said notice plaintiffs declared defendants to be tenants at will and further notified defendants to vacate said premises within five days after service of said notice upon defendants.

On the first day of June, 1955, plaintiffs filed suit wherein the delinquencies under said contract were attached, and the notices herein mentioned were set as exhibits. Plaintiffs prayed that they be adjudged to be the owners of the property and entitled to immediate possession, that defendants be held guilty of unlawful detainer of said premises from and after the 26th day of May, 1955, that defendants be evicted, that plaintiffs be restored to possession, that plaintiffs recover damages for unlawful detainer, and that plaintiffs recover their costs and disbursements and a reasonable attorney's fee.

The defendants answered and admitted substantially all allegations of the complaint but alleged that plaintiffs consented to a change in the terms of said agreement as to the monthly payments by allowing the defendants to make lesser payments. Defendants also alleged fraud on part of plaintiffs in that plaintiffs, at the time said contract was entered into, expressly and impliedly warranted that said premises were in a fit and proper and habitable condition for occupancy as rental properties, and "that in fact said premises upon investigation were not in fit, proper and habitable condition for occupancy as rental units." Defendants further alleged that defendants had paid including taxes and down payment, a total of $35,195.19 and had made improvements and repairs of a reasonable value of $29,936.31, and that plaintiffs seek to enforce a penalty and plaintiffs should return to defendants the amount by which said payments and said improvements exceed the reasonable rental value which they alleged does not exceed $5,000 per year or a total to which defendants are entitled of $42,521.50.

It should be observed that as to the premises being unfit for habitation as rental units, the defendants upon the discovery of said condition failed to offer to deliver up the premises and demand the down payment. If defendant intended to rely upon fraud as alleged, such action would have been essential.

There was before the court evidence that the premises were terribly run down when turned back to plaintiffs and were not in as good condition as when turned over to defendants in 1950, and that extensive improvements and repair, including a new

roof, were necessary when returned to plaintiffs.

It should be further observed that it is disclosed by the record, the briefs and oral argument before this court, that defendants were invited to reinstate the contract and make payment in any manner and avoid a forfeiture over a period of approximately 18 months, but defendants never made tender or attempted, so far as the record discloses, to renegotiate the contract, or to refinance or dispose of the property.

The court made findings of fact and conclusions of law. The findings of fact contained the following:

"* * * that plaintiffs at the time of pretrial and at the time of each hearing on the above entitled cause advised the court and defendants that plaintiffs were interested only in being made whole in accordance with the terms of said contract and had no desire to declare a forfeiture of said contract, save to protect the interest and rights of plaintiffs, and that defendants never made tender of the arrearage on said contract or any portion thereof."

The court found the terms of the contract as herein set out. It found that the total payments made by defendants pursuant to said contract were $36,787.56, and that as of the 30th day of November, 1955, there was due and owing under the contract the total sum of $50,242.53, an arrearage of $13,454.97.

The court found that defendants collected as rentals on said premises during the period defendants were in possession from November 1, 1950, to and including November 30, 1955, the total of $51,751.49.

It further found that at the time the property was surrendered to plaintiffs by defendants it had a reasonable market value of $40,000, and that by reason of the return of the property plaintiffs sustained a loss of an advantageous bargain in the sum of $35,000.

The court found that by reason of defendants' default plaintiffs are entitled to possession of the premises and that the contract should be forfeited, and that defendants have no equity in said premises.

The court concluded that plaintiffs should be adjudged the owners, and entitled to the immediate possession of the premises and that defendants are entitled to no relief on their counterclaim. Judgment was entered in accordance with the conclusions.

Defendants assail the judgment under five points which present the following assignments of error:

1. The court erred in its ruling that the property when returned had a value of only $40,000.

2. The court erred in declaring a forfeiture and allowing plaintiffs to retain all payments made instead of declaring that the contract provides for a penalty and in failing to require plaintiffs to refund the money paid by defendants.

3. The court erred in excluding defendants' evidence as to cost of improvements and maintenance.

■ As to the first assignment, we are of the opinion that the finding of the value of the property when returned to plaintiffs is supported by the evidence. As heretofore observed there was evidence that the property was terribly run down and was not in as good condition when turned back as when received by defendants in 1950.

The only witness called by any party as to fair market value of the property was Edward M. Ashton. There was no question as to his qualification. He had been appraising property for a period of 30 years; he was a member of the Association of Real Estate Brokers, a member of the Real Estate Appraisal Organization of America, and a former president of the Real Estate Board of Salt Lake City and also of the State of Utah.

Mr. Ashton testified that the property in question wouldn't be worth any more than about $40,000. He stated that if in a good state of repair it would have a market value of about $50,000 to $54,800, but that it needed painting inside and out, which would cost $11,000. He testified that it needed a new furnace which would probably cost $1,000, and the roof was leaking and needed considerable repair, and stated: "So my judgment is that as of today the building in its present condition probably wouldn't be worth any more than about $40,000.00"

■ On cross-examination, plaintiff Lorin Peck admitted that he had Mr. R. J. Chapman, the real estate agent who handled the sale to defendants, appraise the property and he placed a value of $61,700 on the same. Mr. Chapman was subpoenaed as a witness by defendants but never called, and the hearsay statement has no significance except as showing that Mr. Chapman who was not submitted by defendant for cross-examination considered the property to be worth over $13,000 less than when he induced the defendants to purchase it for $75,000. Nor does the record show that Mr. Chapman was qualified as an appraiser. Mr. Ashton fully justified his appraisal and defendants produced no witness to show that the property was worth more.

■ As to defendants' second assignment we find no merit to the same. The defendants returned the property to plaintiffs voluntarily and are not contending that they are entitled to it. As heretofore

observed it is conceded that defendants were unable to make their payments and were in arrears over $13,000 when the property was returned to plaintiffs. The record discloses and the court found that plaintiffs had made clear to defendants and the court that they had no desire to take the forfeiture if defendants could and would carry out the terms of the contract. Defendants knew that plaintiffs were contract purchasers—and the court so found—and defendants knew that plaintiffs were obligated to make payments on that contract. Plaintiffs were interested only in being paid for the property according to the contract and were patient and forebearing. In taking back the property plaintiffs sustained a very substantial loss. The payments made by defendants under the contract totaled $36,787.56 and under the contract the payments were to be applied first to the payment of interest. It appears from the exhibits received that the defendants owed on the contract a balance of principal in the amount of $54,217.07 at the time the property was returned to plaintiffs, representing a loss to plaintiffs of an amount in excess of $14,000. If defendants believed the property to be worth more than $54,217.00 and could find a buyer or a lender who would see such higher value, they were afforded ample opportunity to dispose of the same or refinance. But the trial court rightly found that the least to which plaintiffs were entitled were the return of the property and the retention of the amounts paid in by defendants, which were far short of making plaintiffs whole. Defendants can hardly be heard to say, "we know we didn't carry out our contract and we know that we were given 18 months to try and comply with it, and we know that plaintiffs didn't want the property back, but we think that plaintiffs should take a further loss and refund to us what we paid because we are being penalized." We see no occasion for the intervention of equity to impose a further loss on plaintiffs, nor can we see that the remedy of forfeiture, reluctantly accepted by plaintiffs, is inequitable.

We deem it unnecessary to discuss defendants' third contention in view of our consideration of points one and two. However, it should be observed that the record discloses that the trial court did not deny the defendants the right to offer evidence as to improvements. In fact, the court observed: "Yes I want the record to show that. I don't want it to show that you are being shut off here from proving improvements."

Mr. Sheffield: "No, Your Honor, I understand that."

It should be remembered that during defendants' occupancy of the premises they collected as rentals over $51,000. De-

fendants pleaded fraud on the part of plaintiffs. In the recent case of Cole v. Parker [1] the plaintiffs agreed to pay a total price of $40,000 for certain ranch property. Plaintiff paid on the contract $11,600.00 during the 15 months following the agreement. Action was brought by the purchasers to rescind the contract 15 months after they took possession alleging fraudulent representations as to the water available. Defendants denied the fraud and counterclaimed to have the court cancel the contract and forfeit the money paid as liquidated damages. There was evidence offered that the ranch was not worth over $15,000. Plaintiffs contended that it was error for the court to forfeit the $11,600 paid considering the real value of the property and the fact that plaintiff occupied the same only 15 months. On appeal this court affirmed the judgment of the trial court. In our opinion there is less basis for upsetting the decision of the trial court in the instant case than in that case. Here there was no sharp practice of a grasping vendor. Here we have vendees who were not able to fulfill the terms of their contract although accorded all the leniency possible. Only one conclusion is possible, viz. the property was not worth what it was sold for. But the trial court found no fraud and the record does not disclose any fiduciary or confidential relationship or that the defendants were not fully competent to contract. As was said by Chief Justice McDonough in the case of Cole v. Parker, supra:

" * * * In the absence of fraud or imposition, the parties are bound by the price or measure of value they have agreed on, and such price must be paid notwithstanding it may be excessive. The courts cannot supervise decisions made in the business world and grant relief when the bargain proves improvident."

We fail to see where defendants have any ground to complain unless it be in having overestimated the value of the property or in overestimating their ability as operators. They gave comparatively little for possession and the right to operate for 61 months properties valued at $75,000.

It is not our prerogative to step in and renegotiate the contract of the parties. It may be conceded that with an advantaged background we may be able to improve on their work and considering the changed times and conditions say what now appears to us to be fair under such conditions. Possibly at least one of the parties would agree. There is no reason why we should consider the vendee privileged and entitled to our intervention unless the conditions sought to be imposed on the vendee are unconscionable. Equity should not indulge in refinements and exact valuations at a time subsequent to the breach or recission. Further than to determine if en-

1.  5 Utah 2d 263, 300 P.2d 623, 626.

forcement of the contract results in gross inequity, and unless and until the enforcement would be highly unconscionable, we should recognize and honor the right of persons to contract freely and to make real and genuine mistakes when the dealings are at arms' length. It will be conceded, we think, that where a seller seeks not only his pound of flesh but likewise a goodly supply of blood he should not be indulged.

Nor should we fail to observe how many purchasers have made most advantageous bargains and when the contracts have run have secured property three times what the poor sellers received under their contracts. Should not equity, if we are going paternalistic, under the same tokens say to such a buyer, "You can't do this to the poor seller—the property to which he still holds title is now worth two or three times what you are paying him and that is unconscionable; you will be required to pay more than the contract calls for in order that he be not required to give a deed to property worth three times what he is being paid."

Courts of equity should not interfere except when sharp practice or most unconscionable result are to be prevented.

Affirmed. Costs to respondents.

McDONOUGH, C. J., and CROCKETT, WADE and HENRIOD, JJ., concur.